The Honorable Richard A. Jones

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| UNITED STATES OF AMERICA, | No. CR23-58 RAJ |
|---|---|
| Plaintiff, | **GOVERNMENT'S MEMORANDUM IN SUPPORT OF MOTION FOR DETENTION** |
| v. | |
| BRANDON DENZEL WASHINGTON, | |
| Defendant. | **Filed Under Seal** |
| | Detention Hearing: May 9, 2023 11:00 a.m. |

The defendant, Brandon Denzel Washington, has been charged by Indictment with two counts of *Sex Trafficking by Force, Fraud, and Coercion* and two counts of *Transportation for the Purpose of Prostitution*. Dkt. 1. The two counts involving sex trafficking each carry a mandatory minimum sentence of 15 years in prison. Additionally, the evidence discovered during this investigation demonstrates that Washington has been involved in the sex trafficking of multiple women over a period of at least nine years. He used emotional manipulation, assaults, and control over the women's freedom and finances to reap substantial profits. This Court should detain Washington pending trial because he cannot rebut the presumption that he poses a danger to the community or is a flight risk.

/ / /

/ / /

*United States v. Washington* / CR23-58 RAJ
Memorandum in Support of Motion for Detention - 1

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## I. FACTS

**A. Washington's Sex Trafficking and Exploitation of Young Women**

This investigation was launched after a report to Bellevue PD of an unusually high number of male visitors—nearly 100 over a period of just two months—to the luxury Bellevue apartment of a young woman. Investigators collected records relating to the tenants of that apartment, bank records, travel records, online advertisements for commercial sex, images from Washington's Instagram account, Washington's emails, and a number of other records. They concluded that Washington was sex trafficking a number of women all over the United States—here in Washington, but also New York, Florida, Nevada, California, and Hawaii, at least. Investigators were also able to identify and contact two of the women whose names and images appeared in these records. They each provided detailed information describing how Washington lured them into participating in commercial sex.

According to Adult Victim 1, she was 18 years old, just out of foster care, and essentially homeless when she met Washington on Facebook in 2014. She said that he had a username that was "something Bentley." After A.V.1 told him about her background, Washington promised her a better life. He picked her up at a motel in California, then dropped her off at a different motel, far from her friends and hometown, with two other young women. Those women explained to A.V.1 that Washington posted ads for them and then they met men to have sex with them for money, which they then gave to Washington. A.V.1 did not want to participate, but Washington manipulated her into it. A.V.1 followed Washington's instructions and began engaging in sex for money. After a few days, she was raped at gunpoint and complained to Washington, saying again that she did not want to do this. Washington beat her up.

After that, A.V.1 engaged in commercial sex at Washington's insistence for years. He took her from California to Washington, Nevada, and Florida to engage in commercial sex. At first, Washington posted the ads and negotiated with the buyers. A.V.1 was required to give all her earnings to Washington. Although he would buy her

*United States v. Washington* / CR23-58 RAJ
Memorandum in Support of Motion for Detention - 2

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

things that she needed, she had no control over her own money. And any time she did anything wrong, Washington would assault her, using punches and strangulation to the point of her passing out. A.V.1 described a time when Washington tried to throw her off a cliff; she thought she would die.

At some point, Washington made A.V.1 get a tattoo of a Bentley logo on her ankle to show that he owned her:



A.V.1 finally escaped from Washington in approximately February 2020 and did not return.

Adult Victim 2 was recruited by Washington in approximately July 2017. She had been under the control of a different pimp when Washington contacted her while pretending to be a buyer of commercial sex. After they began communicating, Washington told her he was also a pimp and could provide her with a better life. A.V.2 was in Washington State at the time; Washington was in California. He arranged to have her fly to meet him there. Once there, Washington told A.V.2 she would have to earn $30,000. A.V.2 began engaging in commercial sex at Washington's behest. He made ads depicting her and then would post them or make her do so. Washington would have her travel to other states for commercial sex, including California, Oregon, and Hawaii.

As with A.V.1, Washington controlled A.V.2 through regular assaults on her. A.V.2 described acts of violence any time that she didn't say "yes" to Washington. In

*United States v. Washington* / CR23-58 RAJ  
Memorandum in Support of Motion for Detention - 3

UNITED STATES ATTORNEY  
700 STEWART STREET, SUITE 5220  
SEATTLE, WASHINGTON 98101  
(206) 553-7970

particular, these included closed-fist punches, strangulation and a threat to throw her off the 37th floor of a high rise building in Seattle where they had an apartment. And like A.V.1, A.V.2 also has a Bentley tattoo that Washington made her get:



At one point, Washington forced A.V.2 to sign a "contract" in blood that spelled out what she had to do for him and stated that only he could release her from the contract. Agents later located an unsigned version of this contract when they executed a search warrant on Washington's email account. A copy is attached as Exhibit 1 (filed under seal). The terms of this contract called for A.V.2 to earn at least $200,000 per year, give Washington all her materials and possessions, "ask permission to leave the house," "submit completely to her King in all ways," and "live[] for the pleasure and well-being of her King Bentley." It also provided that Washington would "brand[ her] to prove [his] ownership," would "cause great bodily harm as a form of punishment if necessary," and if "necessary" would punish A.V.2 "as a slave."

*United States v. Washington* / CR23-58 RAJ  
Memorandum in Support of Motion for Detention - 4

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

In addition to abusing A.V.2 to get her to engage in commercial sex for him, Washington also controlled her finances. He had A.V.2 open a Bank of America account in her name, then made her give him the ATM card as well as all the money she earned. Like with A.V.1, A.V.2 was given money to pay for the things she needed, but she could not control her own earnings. A.V.2 also had a very wealthy client who gave her a Bentley as a gift; Washington made her register the car in their names together, then he later took her name off the Bentley. He later had the car "wrapped" in gold. Agents reviewed Washington's Instagram page and found that he had posted photographs of a gold Bentley and the title to the car:



Like A.V.1, A.V.2 was eventually able to escape from Washington.

Neither A.V.1 nor A.V.2 made reports to the police. Rather, agents identified them as probable victims during the course of the investigation and reached out to them to see if they would talk. They did. They both described Washington's violence and control

*United States v. Washington* / CR23-58 RAJ
Memorandum in Support of Motion for Detention - 5

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

both towards them as well as to the other young women that he coerced into providing commercial sex. A.V.1 also reported that Washington would regularly attempt to recruit homeless or vulnerable women by making them false promises of making money and offering a better life. She estimated that during a 12-month period when they lived in San Francisco, he successfully lured 20 to 30 young women and trafficked them for period of a few weeks to several months.

The various records that agents had collected before interviewing A.V.1 and A.V.2 substantially corroborated their reports. For example, the luxury Bellevue apartment was rented to a woman, M.P. She had hundreds of ads depicting her and advertising commercial sex posted in cities all over the country during the period from 2018 to as recently as April 2023. Also, a bank account in M.P.'s name was funded largely through cash deposits and cash payments through applications like CashApp and Zelle made by a number of women; many of these women also appeared to be engaged in commercial sex based on their personal ads on sites known for advertising commercial sex. The total amount deposited into the account from May 2020 through February 2022 was more than $583,000. Agents obtained some photographs of users conducting transactions on the account; these depicted Washington.

In addition to the photos above related to the gold Bentley, Washington posted other photos to his public Instagram account that demonstrated he was making money off of the forced sex work of other young women. His Instagram tagline reads: "If It's Not A Penthouse I Can't Sleep In It / If It's Not A Gold Bentley I Can't Sit In It / If it's Not a Gold Jetski I Can't ride it." His account name is "penthouse_bentley." His posted photographs include photos of himself, the gold Bentley, a gold personal watercraft, the interior and views from his luxury apartments and hotel rooms, his meals (including menu prices and receipts) at high-end restaurants, his grocery shopping at Whole Foods, and even the extravagances afforded to his dog (named "Bentley"), as well as comments and photos like those below:

*United States v. Washington* / CR23-58 RAJ  
Memorandum in Support of Motion for Detention - 6

UNITED STATES ATTORNEY  
700 STEWART STREET, SUITE 5220  
SEATTLE, WASHINGTON 98101  
(206) 553-7970






*United States v. Washington* / CR23-58 RAJ  
Memorandum in Support of Motion for Detention - 7

UNITED STATES ATTORNEY  
700 STEWART STREET, SUITE 5220  
SEATTLE, WASHINGTON 98101  
(206) 553-7970

 

### B. Washington's History and Characteristics

Based on the investigation to date, the government believes that Washington has little to no ties to this jurisdiction. While he is from California, and his mother and sisters may still reside there, Washington has no significant ties to any particular location. Rather, he travels almost constantly, in order to move the women he is trafficking from city to city or to supervise them. As an example, after Washington's indictment, the government obtained a search warrant for historic and prospective location data for his phone in order to locate him and arrest him. According to the historic data received, in the period from March 25 to April 25, 2023, Washington's phone—and presumably Washington—was in California, Oregon, Florida, Colorado, Georgia, Illinois, and Washington. Since April 25, Washington flew from Fort Lauderdale to Charlotte, traveled to Las Vegas, flew from Las Vegas to Portland via Los Angeles, then traveled up Interstate 5 to Seattle.

Not only does Washington not have strong ties to this district, but he also has ample means to travel anywhere he wishes. The government is aware that Washington

*United States v. Washington* / CR23-58 RAJ
Memorandum in Support of Motion for Detention - 8

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

has substantial assets, including a Bentley for which he holds clear title and has boasted is valued at $160,000.[1] His Instagram posts show that he is living an extremely lavish lifestyle—driving a Porsche, wearing Versace and other designer clothes, sporting Chanel and Dolce & Gabbana sunglasses, displaying significant amounts of cash, bragging of making thousands of dollars in just a few days' "work," taking expensive vacations to Bali and Hawaii, and renting luxury apartments and hotel rooms in several cities. His travel records and the bank records for accounts linked to him through at least one woman he traffics further bear this out.

Finally, as alluded to above, there is strong evidence that Washington remains engaged in trafficking women. His travel patterns, Instagram posts, and bank accounts certainly bear this out. Additionally, when agents located Washington to arrest him, he was sitting in his car outside the Bellevue Hilton. Hotel video apparently shows Washington leaving one of the hotel rooms a short time earlier. That room was registered to T.L., another likely victim that agents had identified earlier during the investigation based on banking records, travel records, and ads for commercial sex. It appears Washington was waiting in the parking lot for T.L. to finish seeing a sex buyer.

C.  **Information Provided by the Probation Office**

U.S. Probation reports that Washington has a 2013 conviction for having sex with a minor at least three years younger than him and two convictions from 2011 for Sexual Intercourse with a Minor involving Special Circumstances. Based on the government's review of Washington's NCIC and the relevant penal code, it appears the "special circumstances" were again that the minor was at least three years younger than Washington. U.S. Probation also reports that the 2011 charges were later reduced to misdemeanors and dismissed pursuant to § 1203.4 of the California Penal Code. That law provides that an individual sentenced to probation may petition to have his case

---

[1] The fair market value of the Bentley may be more like half that, but the government has insufficient information about the condition of the car, its mileage, and its features (beyond the gold wrap) to provide a more accurate estimate.

*United States v. Washington* / CR23-58 RAJ
Memorandum in Support of Motion for Detention - 9

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

dismissed if he has completed probation, has complied with its terms, and is not serving a sentence for any new offense. While the case is dismissed, it is not expunged. More significantly, the conviction can be alleged as a predicate offense for future crimes; the offender must still admit he has been convicted of a crime when applying to certain jobs; and the dismissal does not relieve the offender from the prohibition against possessing firearms, the duty to register as a sex offender, or the requirement that he pay restitution or comply with a protective order.

U.S. Probation also reports[2] that Washington claimed that he was currently staying at a hotel in the Seattle area while he is between housing in California that is provided through government assistance. He said he has very limited assets, that he has been unemployed for the last three years, and that he makes about $2,000 per month as a photographer. He proposes living with his sister at her apartment nearby at 1600 Second Avenue. And he has a girlfriend, M.P., who he has been dating for five years.

This is all grossly misleading. Based on the reports of Adult Victim 1 and Adult Victim 2, as well as activity on M.P.'s account, Washington has access to bank accounts that have hundreds of thousands of dollars flowing through them. His lifestyle is also wildly inconsistent with qualifying for government-assisted housing or making only $2,000 per year. As described above and documented by Washington himself on Instagram as well as through evidence of bank accounts linked to him and travel records, he is making thousands of dollars per month through sex trafficking, he wears designer clothing, stays in luxury apartments and hotels, and in general lives a luxurious life funded by his abuse of women. His extraordinarily extensive travel schedule also belies his claims that he has no funds and lives in California in modest housing paid for by the State of California.

---

[2] The information in this paragraph was all obtained from Officer Erin O'Donnell in a phone call, as her report was not yet available.

*United States v. Washington* / CR23-58 RAJ
Memorandum in Support of Motion for Detention - 10

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

With respect to his proposed residence, this address is the Helios apartment building. His sister does not reside there. Rather, the application for the apartment is in the names of M.P. and H.P., both of whom are engaged in commercial sex and controlled by Washington, based on the M.P. bank account records, travel records, and online ads for commercial sex, which depict M.P. or H.P. and advertise "duos" for them together. Adult Victim 1 and Adult Victim 2 have both stayed there, and they report that it was used for commercial sex and as a place for the victims of Washington's sex trafficking to stay when they were in Seattle to work. The photograph of the Bentley tattoo on a foot on page five, above, was taken in this apartment. Rent on that apartment was, during the term September 4, 2021, through September 3, 2022, $4,087 per month. The apartment is controlled by Washington:



*United States v. Washington* / CR23-58 RAJ
Memorandum in Support of Motion for Detention - 11

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Finally, although Washington tells this Court that M.P. is a woman he has been dating for five years, he told the FDC that M.P. is his spouse. The government believes she is neither: she is one of his many victims.

## II. LEGAL STANDARD

In ruling on a motion for pretrial detention, the Court must determine whether any condition or combination of conditions will reasonably assure the appearance of the defendant as required, and the safety of any other person and the community. 18 U.S.C. § 3142(f). The Bail Reform Act provides that a court should detain a defendant pending trial if "no condition or combination of conditions . . . will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(f). The United States bears the burden of showing that the defendant poses a danger to the community by clear and convincing evidence, and it bears the burden of showing that a defendant poses a flight risk by a preponderance of the evidence. *United States v. Gebro*, 948 F.2d 1118, 1120 (9th Cir. 1991). The government may present evidence by way of evidentiary proffer sufficient to make the court aware of the defendant's role in the offense, the weight of the evidence against the defendant, and other relevant factors. *See, e.g. United States v. Salerno*, 481 U.S. 739, 743 (1987); *United States v. Winsor*, 785 F.2d 757 (9th Cir. 1986).

The Bail Reform Act identifies four factors that a court should consider in analyzing a detention motion: "(1) the nature and circumstances of the offense charged, including whether the offense is . . . a violation of section 1591; (2) the weight of the evidence against the person; (3) the history and characteristics of the person, including (A) the person's character . . . family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and (B) whether, at the time of the current offense or arrest, the person was on probation [or] on parole . . .; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release . . . ." 18 U.S.C. § 3142(g).

*United States v. Washington* / CR23-58 RAJ  
Memorandum in Support of Motion for Detention - 12

UNITED STATES ATTORNEY  
700 STEWART STREET, SUITE 5220  
SEATTLE, WASHINGTON 98101  
(206) 553-7970

The Bail Reform Act further provides that in a case such as this, involving "an offense under chapter 77 of this title for which a maximum term of imprisonment of 20 years or more is prescribed," there is a rebuttable presumption that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." 18 U.S.C. § 3142(e)(3)(D). Chapter 77 includes 18 U.S.C. § 1591, which is the statute under which Washington is charged in Counts 1 and 3. The maximum penalty for any violation of 18 U.S.C. § 1591 is life; in addition, the mandatory minimum sentence for Washington is 15 years.

Additionally, the Justice for All Act provides crime victims with the right "to be reasonably heard at any public proceeding in the district court involving release." 18 U.S.C. § 3771(a)(4). Both the Court and the government are charged with ensuring that the victims are afforded their rights. 18 U.S.C. § 3771(b)(1), (c)(1).

### III.    ARGUMENT

Each of the statutory factors listed in § 3142(g) weighs in favor of pretrial detention in this case. There is no combination of conditions that will reasonably ensure Washington's presence at future court proceedings or the safety the community, and Washington has failed to rebut that presumption. Washington should be detained pending trial.

**A.    Nature and Circumstances of the Offense**

The offenses that Washington committed were both dangerous and disturbing. As described above, he first coerced a young woman, A.V.1, into participating in prostitution against her will. He isolated this already fragile young woman from her limited support network and manipulated her into agreeing to engage in sex for money with men she did not know. When she told him she wanted to leave because she had been raped, he beat her up. And he continued to control her life and her earnings for years, through manipulation, force, and lies. He also recruited another young woman, A.V.2, to engage in commercial sex, and while she had already been involved in prostitution before meeting Washington, he controlled her life and her earnings through force and

*United States v. Washington* / CR23-58 RAJ
Memorandum in Support of Motion for Detention - 13

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

manipulation too. The information provided by A.V.1 and A.V.2, along with the investigation by the government, demonstrates that Washington was engaged in sex trafficking of women before he met A.V.1 and continued well after both A.V.1 and A.V.2 escaped.

And, of course, Washington is charged with two counts of violating 18 U.S.C. § 1591. The statutory bail factors specifically direct the magistrate to consider this particular statute in determining whether detention is appropriate. Moreover, these offenses each carry a mandatory minimum sentence of 15 years in prison.

Thus, the nature and circumstances of the offenses weigh strongly in favor of detention. They demonstrate that the defendant is willing to engage in violence and has a powerful motive to flee.

### B. The Weight of the Evidence

The strength of the evidence against Washington is strong. Two different woman willingly spoke with agents on multiple occasions and provided detailed accounts of their experiences with Washington. Their accounts were largely corroborated by the investigation—most of which occurred even before the two victims were contacted and of which the two women had been unaware. Washington's own words on his Instagram account, the contract in his emails that he forced A.V.2 to sign (Ex. 1), and bank and travel records over a period of many years demonstrate that Washington did exactly what he has been accused of.

### C. Washington's History and Characteristics

Washington's history and characteristics further weigh in favor of detention. He has previously been convicted of crimes involving sexual abuse of a minor. While these convictions are old, this is not mitigating; instead, they corroborate that Washington has been involved in the sexual abuse of young women for many years.

Additionally, Washington has substantial financial resources. He steals all of the money that the women he coerces into prostitution earn, and spends it lavishly on himself

*United States v. Washington* / CR23-58 RAJ
Memorandum in Support of Motion for Detention - 14

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

(and his dog). These funds are not from any legitimate employment, and enable him to readily abscond.

The government acknowledges that Washington appears to have close family ties, but it also appears that he uses his relationships with his mother and sisters to further his illegal activities. For example, his mother's and sisters' names appear on rental applications as the purported employers of the victims who are the named renters of Washington's luxury apartments. He has also brought his sisters along on some of his travels with the women he is exploiting. It is unclear to what extent they are knowingly involved in furthering his illegal activities, but at a minimum they are both the beneficiaries of and willfully blind to his misconduct.

Finally, Washington has no genuine community ties to this district or any other. Although he is often in our district, his stays are short and are for the purpose of recruiting new women to work for him and overseeing his "business" of pimping out his victims. He stays in hotels and rented apartments, and moves constantly from this state to others, including New York, Hawaii, Oregon, North Carolina, Florida, California, and Nevada, at a minimum.

### D. Danger to Any Person or the Community

Washington's release would pose a significant danger to the community. Based on the investigation to date, it is clear that Washington has been engaged in sex trafficking women for nearly ten years—possibly longer—and is still doing so. That trafficking has included physically abusing and assaulting women in order to coerce them into making money for him. As women develop the fortitude and resources to leave him, his business model requires that he coerce more women into engaging in commercial sex. Thus, his release presents a danger to both current and future victims. His past victims may well also be at risk, as he has previously assaulted them, has threatened them to try to gain their compliance and return to him, and will be motivated to attempt to discourage them from cooperating with the prosecution—a risk that will be heightened as he gains access

*United States v. Washington* / CR23-58 RAJ
Memorandum in Support of Motion for Detention - 15

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

to materials in discovery. Thus, Washington poses a real and serious danger to the community at large and Adult Victims 1 and 2 in particular.

### E. The Victims' Positions

The undersigned attorney along with a victim advocate made A.V.1 and A.V.2 aware of Washington's arrest on May 2, 2023. They have advised that they intend to attend the detention hearing by phone if it is scheduled at a time that is convenient for them. They do not intend to speak, but instead have asked the government to relay the information below to the Court.

Both Adult Victim 1 and Adult Victim 2 expressed significant relief that Washington is now in custody. Although neither victim has seen Washington in several years, both remain very afraid of him. They ask this Court to detain him pending resolution of this matter.

Adult Victim 1 also noted that when Washington was arrested back in 2013 and thought he was facing a substantial amount of time in custody, he discussed with her making plans to flee to Mexico. She is confident that he will do anything within his power to avoid being held responsible for his crimes and sentenced to incarceration.

### F. Other

For a defendant to be released into the community on conditions requires the Court to have a great deal of trust that he will comply with the conditions of release. This Court should have no such trust in Washington. As described above in Section I.C, Washington is not worthy of this Court's trust. He has lied about his assets, his income, his profession, his relationship with M.P., his housing, and the proposed address where he intends to live. He is not amenable to supervision.

* * *

The factors above all demonstrate that Washington poses both a risk to community safety and a risk of nonappearance. He should be detained pending trial.

///
///

United States v. Washington / CR23-58 RAJ
Memorandum in Support of Motion for Detention - 16

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## IV. CONCLUSION

Washington cannot rebut the presumption that he poses a danger to the community and presents a risk of non-appearance. Indeed, given the violence of his past conduct, the fact that Washington engaged in sex trafficking over a period of many years and is likely still funding his lavish lifestyle through the abuse of numerous women, and the substantial resources he has access to, the danger Washington poses to community safety and his risk of non-appearance cannot be overstated. This Court should detain him pending trial.

DATED this 8th day of May, 2023.

Respectfully submitted,

NICHOLAS W. BROWN
United States Attorney

*/s/ Erin H. Becker*
ERIN H. BECKER
Assistant United States Attorney
United States Attorney's Office
700 Stewart, Suite 5220
Seattle, Washington  98101
Phone: (206) 553-2905
Fax: (206) 553-0755
E-mail: Erin.Becker@usdoj.gov

*United States v. Washington* / CR23-58 RAJ
Memorandum in Support of Motion for Detention - 17

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970