HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>BRANDON DENZEL WASHINGTON,<br>Defendant. | No. CR23-58-RAJ<br>ORDER ON DEFENDANT WASHINGTON'S MOTION FOR A JUDGMENT OF ACQUITTAL AND MOTION FOR NEW TRIAL AS TO COUNTS 1 AND 8 |

## I. INTRODUCTION

THIS MATTER comes before the Court upon Defendant Washington's Motion for a Judgment of Acquittal and Motion for New Trial as to Counts 1 and 8. Dkt. 486. The Government opposes both motions. Dkt. 499. Thereafter the Defendant filed his Reply. Dkt. 500. The Court has considered the Defendant's motions and the

Government's response and the files and pleadings herein. The Defendant requested oral argument, but the Court does not find it necessary. For the reasons set forth below, the Court DENIES the Defendant's motions.

## I. BACKGROUND

The Defendant was charged by way of a Superseding Indictment in Count 1, Conspiracy to Commit Sex Trafficking by Force, Fraud, or Coercion; Count 2, 4 and 6 with Sex Trafficking by Force Fraud or Coercion; Counts 3, 5 and 9 with Transportation for the Purpose of Prostitution; and Count 8 with Sex Trafficking by Fraud or Coercion.

The Defendants proceeded to trial and on March 18, 2026 and a unanimous jury found Defendant Washington guilty of Counts 1, 3, 5, 7, 8 and 9. The jury was unable to reach verdicts on Counts 2, 4 and 6. The jury acquitted co-Defendant Maria Palm of the one charge she faced, Conspiring to Engage in Sex Trafficking by Force, Fraud, and Coercion. Dkts. 444 and 445.

Defendant Washington subsequently filed a timely motion seeking judgment of acquittal on Counts 1 and 8 pursuant to Federal Rule of Evidence 29 or, in the alternative, a new trial pursuant to Federal Rule of Evidence 33. Dkt. 486.

## II. LEGAL STANDARDS

### A. Legal Standard for Rule 29 Motion.

Federal Rule of Criminal Procedure 29 (a) provides:

> After the Government closes its evidence or after the closure of all the evidence, the Court on the Defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction.

The Court must deny a Defendant's Rule 29 motion if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United*

*States v. Miller,* 953 F.3d 1095, 1108 (9th Cir. 2020). In undertaking this analysis, '[T]he Government does not need to rebut all reasonable interpretations of the evidence that would establish the Defendant's innocence, or rule out every hypothesis except that of guilt beyond a reasonable doubt.' *United States v. Nevils,* 598 F.3d 1158, 1164 (9th Cir. 2010). When a Rule 29 motion has been made, the reviewing Court is to review *de novo* whether sufficient evidence exists to support a guilty verdict. *United States v. Suarez,* 682 F.3d 1214, 1218 (9th Cir. 2012).

**B. Legal Standard for Rule 33 Motion.**

The relevant part of Federal Rule of Criminal Procedure 33 provides:

> Upon the Defendant's motion, the Court may vacate any judgment and grant a new trial if the interest of justice of so requires.

In analyzing a Rule 33 motion, the Court is permitted to weigh the evidence and in so doing evaluate for itself the credibility of the witnesses and act as a thirteenth juror and decide whether it would have found guilt beyond a reasonable doubt by weighing the evidence objectively. *See Hudson v. Louisiana,* 450 U.S. 40, 44, 101 S. Ct. 970, 972, 67 L. Ed. 2d 30 (1981).

## III. DISCUSSION

**A. Count 1, Conspiracy**

In Count 1 of the Superseding Indictment, the Government alleged Conspiracy to Commit Sex Trafficking by Force, Fraud and Coercion to have been committed with co-conspirator Maria Palm, and with others known and unknown.

The Defendant contends the Government's only evidence for an "agreement" to prove Count 1 was that Brandon Washington did so with charged co-conspirator, Maria Palm. The Defendant acknowledges there was text message communication between the two and other men who were in the industry but argues the Government did not present any agreement or evidence of a conspiracy with anyone other than Ms. Palm. Dkt. 486, at p.3

By acquitting Ms. Palm of conspiracy, the defense suggests the jury rejected the agreement the Government relied upon to prove Count 1. This argument is premised upon the contention that no other co-conspirators were charged, no other co-conspirators were identified and no witness testified to any evidence of an express or implied agreement with any person or any "unknown" individual. The defense characterizes the evidence at trial as showing no more than Ms. Palm and Mr. Washington worked together in a business arrangement but not an agreement to commit the charged offense of sex trafficking by force, fraud or coercion. Dkt. 500, at 4. More specifically, the Defendant notes that the jury was unable to reach a verdict on all counts alleging sex trafficking by force, fraud or coercion except for Count 8, involving E.R. which was based solely on fraud.

The Defendant acknowledges, however, that the evidence at trial demonstrated that Ms. Palm was the individual primarily responsible for coordinating and facilitating E.R.'s escort activities. Dkt. 486, at 14. Despite this admission, the defense contends there is no basis to conclude that Mr. Washington entered any agreement separate from Ms. Palm, to commit sex trafficking of E.R. by fraud.

In response to the Government's opposition, the defense advances the theory that the Government did not produce any evidence that Mr. Washington's sisters, Brittany and Breeana, had knowledge of force fraud or coercion nor any evidence of an agreement with them to engage in such conduct. Specifically, the defense argues that serving as an employment reference for Ms. Palm, engaging in limited text messaging with the sisters, and providing a bank account fail to establish any agreement to participate or commit the charged offense. Dkt. 500, at 6.

It is undisputed that during trial, the Government presented evidence of text messages between the Defendant and "other suspected pimps." Dkt. 500, at 6. The defense challenges this evidence as lacking proof that these individuals were engaged in

sex work or any criminal activity or evidence that the communications referenced the use of force, fraud or coercion.

Because the jury failed to return verdicts on Counts 2, 4 and 6, the defense asserts only Count 8 could sustain the basis for the conspiracy charge. While the jury was unable to reach verdicts on these counts, it does not mean the jury ignored the evidence from the witnesses in determining the existence of concerted and coordinated actions of the two Defendants.

The Defendant further contends that since the theory of fraud served as the only basis for Count 8, it was improper for the jury to reach a unanimous finding of force, fraud or coercion as charged in Count 8. Additionally, the Defendant points out that notably absent in the evidence is that Mr. Washington had any communication with his sisters or other unknown "suspected" pimps about E.R. Dkt. 500, at 8.

The Government challenges Washington's perception of the extent and characterization of the conspiracy charged in Count 1. The totality of the evidence pointed to details of the extensive interdependent working relationship between Washington and Palm. This evidence in addition to that noted by the Government at Dkt. 499, pgs. 3-4, included:

- The use of an Instagram page to showcase his wealth;
- The use of internet via social media to attract potential sex workers;
- Examples of Washington directing Palm to try and recruit potential sex workers;
- Telegram or text messages between Washington and Palm regarding his use of violence and coercion of various women under their control;
- Washington sharing details on numerous occasions with others how he and Palm worked together, including Washington's reference to Palm as his "assistant pimp";

- Palm's testimony where she admitted her involvement in making travel arrangements for numerous women they recruited online;
- Extensive text and telegram messages between Washington and Palm discussing arranging commercial sex "dates" for women, making travel arrangements and reporting on money earned through commercial sex;
- Testimony how Washington and Palm engaged in activities in the trafficking of H.C.P. and E.J., with among other details, how the two Defendants maintained control over them to earn money through commercial sex; and,
- Testimony from E.J. about how Washington and Palm worked together to recruit and manipulate her into continuing to engage in commercial sex. (Specifics referenced in the Government's Response Memorandum). Dkt. 499, at 3-7.

The Government further points to evidence that Washington conspired with his two sisters, Breeana Hill and Brittany Washington to sex traffic adult women. The evidence to support this claim is the existence of a bank account Washington used to facilitate his sex trafficking activities. Such evidence includes the testimony of E.J. that she had been directed by Washington to deposit sex work money into a bank account in the name of his sister, Breeana Hill, *See 3/3/26 Tr. At 2386.*

Further supporting this claim is evidence that Brittany assisted in enabling Palm to be able to rent various apartment buildings used to conduct commercial sex acts. The evidence was also tendered that Brittany served as an employment reference for Palm for various apartment leases in various cities, suggesting she was Palm's employer. Dkt. 499 at 8.

Additionally, the Government's evidence referenced text messages between Washington and Hill generally discussing his involvement in trafficking activities as

well as T.C.'s, testimony how Washington used family members and his sisters to manipulate and maintain control over her. Dkt. 499, at 8.

Last, the Government tendered a variety of statements allegedly between Washington and other pimps suggesting he was working with them to recruit and traffic women. Dkt. 499 at 9.

**B. Count 8, Sex Trafficking by Force, Fraud or Coercion.**

The Defendant contends E.R. testified there was no violence, nor any coercion either to cause her to engage in commercial sex acts or to travel for the purpose of prostitution. Dkt. 486, at 3. Consequently, the only factual question remaining was whether Defendant Washington used fraud to cause E.R. to engage in commercial sex work during the months she worked with him.

The defense suggests that E.R.'s initial discussions with him centered around her desire to make money and have financial security, but there were no explicit financial agreements agreed upon. Moreover, the defense references a series of specific statements by E.R. to support his contention that E.R. chose voluntarily and willingly to engage in commercial sex acts with Washington and Palm assisting her in arranging dates and paying for all her expenses. Dkt. 486, at 5.

In addition, the defense challenges the Government's evidence regarding the allocation of the amount of money Washington kept from E.R.'s earnings against the money used for her living and business expenses.

The Government argued in closing remarks that the basis for Count 8 was limited to Washington's use of fraud to cause the sex trafficking of E.R. Her testimony reflects that Washington proposed that E.R. engage in commercial sex work for him to "make money," and "help her get her own place to live." E.R.'s commercial sex work for Washington was limited to between March and May, 2021. E.R. testified that she earned approximately $20,000 engaging in commercial sex work. Of this amount,

Washington permitted her to keep $1,000 with the balance retained for "operating costs." Dkt. 499, at 11.

Finally, E.R. testified that had she known Washington was going to take 75 to 80 percent of her earnings from commercial sex from her commercial sex acts, she would not have agreed to perform the sex acts as she did. Dkt. 486-1, at 111.

When asked if she would have agreed to engage in commercial sex with strangers for two months if she knew she was going to leave with only a thousand dollars of her own money, she indicated "not if it was laid out that way". Dkt. 486-1, at 112.

And when asked if that was in fact what happened she unequivocally responded, "yes".

While the focus of Count 8 was E.R., the Government's evidence included testimony from other sex workers that absent Washington's promises of financial stability and housing, they would not have engaged in commercial sex work for him. Dkt. 499, at 12-15.

## IV. DISCUSSION

### A. Analysis of Count 1 under Rule 29.

The Defendant's motion is predicated upon two theories. First that acquittal of Palm on the conspiracy charge establishes the jury "necessarily rejected the existence of the very agreement the Government relied upon to prove Count One"; and second, this warrants a judgment of acquittal under Rule 29. Dkt. 486, at 13-15.

The Defendant is decidedly mistaken on the facts and law. As the Government points out in *United States v. Powell,* 469 U.S. 57, 64-68 (1984), the United States Supreme Court held that even truly inconsistent criminal jury verdicts were not a proper basis to set aside a jury verdict of guilty, noting that this rule had "stood without

exception in this Court" for over fifty years since *Dunn v. United States,* 284 U.S. 390, 393-94 (1932).

To follow the Defendant's approach would encourage this Court to speculate on the jury's thought process as well as the Double Jeopardy Clause bar on the Government's ability to relitigate inconsistent verdicts. The jury may very well have been sympathetic to the disparities in culpability of the two Defendants especially with some of the sex worker witnesses who opined that Palm was a victim and not a defendant.

Highly apposite and squarely on point is *United States v. Ayers,* 924 F.2d 1468, 1483 (9th Cir. 1991) where the Court denied the Defendant's request for a new trial on the grounds the jury's ability to find him guilty of conspiracy to commit tax fraud, but inability to reach unanimous verdict finding his co-Defendant guilty of conspiracy resulted in an inconsistent verdict.

The same outcome in other Ninth Circuit authority supports this conclusion. In *United States v. Hughes Aircraft Co*., 20 F.3d 974, 977-78 (9th Cir. 1994), the Court affirmed the conspiracy conviction where an "indispensable co-conspirator" was acquitted of conspiracy on identical evidence.

The Government cites to persuasive authority this Court must follow in its analysis of the facts and underlying motion. *United States v. Valles-Valencia,* 823 F.2d 381, 381-82 (9th Cir. 1987) illuminates this point holding that "the acquittal of all conspirators but one does not necessarily indicate that the jury found no agreement to act."

The Defendant's argument that the jury rejected the existence of a conspiracy based upon the evidence presented at trial is flawed. This Court cannot assume that the evidence was insufficient to establish the existence of a conspiracy or an agreement to

act merely because of the not guilty verdict of Palm. To do so would be premised upon pure speculation. *Ayers,* 924 at 1483; *Valles-Valencia,* 823 at 381-82.

As the Government points out, *Powell* supports the conclusion that the jury's acquittal of Palm could have been the result of "mistake, compromise or lenity."

At trial, the Government presented several weeks of trial testimony from various witnesses including T.G., D.A., E.J. and H.C.P., women who were self-admitted sex workers who were recruited and worked for Washington.

These women decidedly testified about the extensive working relationship between Palm and Washington, much of which was detailed in the Government's briefing. This testimony was supplanted with Washington's social media and text messages, business records and financial records from which the jury could have found that Washington had conspired with Palm to commit the crime of sex trafficking through force, fraud and coercion. This Court cannot leap to the conclusion, as suggested by the Defendant, that because the jury acquitted Palm of conspiracy the evidence was insufficient to find the existence of the conspiracy and Washington's guilt.

The defense challenges the Government's argument regarding Washington's sisters and "other pimp" evidence as insufficient to support his conviction. Taking that evidence in isolation would not necessarily support a conviction, but this evidence taken into consideration with the testimony of the actual sex workers, the volume of social media and business records and conduct with unindicted coconspirators from a cumulative perspective is persuasive that the Governments evidence was more than sufficient to support his conspiracy conviction.

The defense suggests that because the Government repeatedly argued the singular theory of Palm and Washington, the evidence at trial of the conduct of others

was insufficient to support the conspiracy verdict. It is undisputed that the Government argued vehemently in closing that the conspiracy that existed was between Washington and Palm. This Court does not disagree with that observation. While that may have been the Government's statements in closing, Jury Instruction No. 4 clearly advised the jury that the statements and arguments of the attorneys were not evidence. Dkt. 435, Instruction No. 4. Consequently, the jury was free not to limit the conspiracy charge to just the two named Defendants merely because of the argument of Counsel.

Considering this evidence in a light most favorable to the Government, the evidence presented at trial was more than sufficient to conclude any rational trier of fact could have found beyond a reasonable doubt that Washington and Palm conspired to commit sex trafficking by Force, Fraud, or Coercion.

**B. Analysis of Count 8 under Rule 29**

As noted above, Count 8 of the Superseding Indictment charged Washington with Sex Trafficking through Fraud and Coercion between February and May of 2021. Dkt. 70. The coercion component of this charge was dispelled with the unequivocal testimony of E.R. on several occasions during her trial testimony where she indicated Washington did not threaten her, force her or coerce her into performing sex acts for money. Dkt. 486-1, at 88, 100 and 108.

Fraud served as the basis for the Government's charge in Count 8. Fraud was defined for the jury as any act of deception, trickery or misrepresentation. Dkt. 435, Jury Instruction No. 22.

As noted by the Government, before Washington suggested that E.R. engage in commercial sex work for him, he explained that it was an opportunity for her to make money and that he would help her get her own place to live and would help her obtain

medical care for medical conditions she indicated she needed assistance. Dkt. 481-1, at 28-30.

E.R. described at trial Washington's financial expectations of her performing sex acts for money. She also described that most of the money she deposited into an account she opened was transferred out leaving her money for "basic expenses, like food." *Id. at 47.* Washington told her the rest of the money was being used for "operating costs." *Id.* at 47.

While traveling to California at Washington's direction to engage in commercial sex work, E.R. became ill, to the point of being suicidal. *Id., at 55-56.* At this point she testified she advised Washington that she would no longer work for him in commercial sex work. *Id.* at 56-57. Washington in turn advised her that she would she "could keep $1,000" of the approximately $20,000, money she had earned in commercial sex work over the past two months. *Id.* at 58.

The balance of money earned by E.R. was kept by Washington. What lured her into working for Washington was "financial security" or the specialized medical treatment. When she separated from him, she was far short of what led her to perform sex acts with strangers for two months.

As noted above, had E.R. known Washington was going to retain 75-80 percent of her earnings she would not have engaged in the services she performed for him. The totality of evidence at trial regarding Washington's retention of 75-80% of her sex trafficking earnings clearly fits within the definition of him having used deception, trickery or misrepresentation to cause her to engage in sex work at his direction.

Considering the evidence in the light most favorable to the Government, any rational trier of fact could have found the essential elements of Count 8 beyond a

reasonable doubt. These facts alone are sufficient to serve as the basis to deny the Defendant's Rule 29 motion.

Additional evidence to support this conclusion is the detail of the testimony of Washington caused other women to engage in commercial sex by means of fraud in combination with both force and coercion. Rather than repeat the Government's evidence, the Court finds it is additional compelling evidence to support the conclusion of the extent of persuasive evidence that Washington is guilty of Count 8. *See* Dkt. 499, pgs. 12-15.

**C. Analysis Of Count 1 and 8 Rule 33 Motion**

A motion for a new trial should be granted "only in exceptional cases in which the evidence preponderates heavily against the verdict." *United States v. Pimental*, 654 F.2d 538, 545 (9th Cir. 1981). A motion for a new trial is directed to the discretion of the trial judge. *Id; see also United States v. Del Toro-Barboza,* 673 F.3d 1136, 1153 (9th Cir. 2012). Having heard all the evidence presented and as indicated above, the Court finds there was more than sufficient evidence to sustain the verdict, and no miscarriage of justice would occur with this finding. This Count unequivocally finds that the jury's verdict on each of the two counts was properly rendered based upon the facts as presented and instructions of law.

For the foregoing reasons, Defendant Washington's Motions for a Judgment of Acquittal and for a New Trial as to Counts 1 and 8 are **DENIED.**

DATED this 5th day of August, 2026.

Richard A Jones

The Honorable Richard A. Jones
United States District Judge